Filed 5/7/21  Bauman v. Wells Fargo Bank CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

|  |  |
|---|---|
| JORDANA BAUMAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant and Respondent. | D076781<br><br><br>(Super. Ct. No. 37-2018-00028859-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed.

Jordana Bauman, in pro. per., for Plaintiff and Appellant.

Severson & Werson and Jan T. Chilton; Severson & Werson and Kerry W. Franich, for Defendant and Respondent.

### INTRODUCTION

Plaintiff Jordana Bauman (Bauman) filed two lawsuits against defendant Wells Fargo Bank, N.A. (Wells Fargo), both arising from loans made in 2007 that were secured by deeds of trust on Bauman's property.  This lawsuit was filed in 2018 and alleges various causes of action against Wells Fargo arising out of the loans.  The other lawsuit was filed in 2019

after Wells Fargo foreclosed on the property, *Bauman v. Wells Fargo*, case No. D076767. Although there is considerable, but not complete, overlap between the facts and issues in these separate lawsuits against Wells Fargo, the parties have not moved to consolidate the appeals. We consider them individually.

## BACKGROUND

Bauman alleges in her second amended complaint (SAC) that she executed a mortgage note on December 31, 2007, secured by a deed of trust against her condominium on Albatross Street, in San Diego.[1] The loan was made by World Savings, which was forced to close and had its assets and liabilities taken over by Wachovia Bank. Wachovia in turn was decertified and merged into Wells Fargo.

Bauman contends that from the inception, the loan was never funded. However, she states she made regular payments on the loan from 2007 through 2011. Bauman further alleges that she informed Wells Fargo in April 2011 that the loan had not been funded. Wells Fargo refused to accept further payments from her after May 1, 2011.

This lawsuit was filed on June 12, 2018. Bauman asserts she was prevented from filing earlier due to the automatic stays imposed by a series of bankruptcy proceedings that she filed from 2010 to 2018.

On March 1, 2019, the court sustained a demurrer filed by Wells Fargo and granted a motion to strike. Bauman filed the SAC on March 26, 2019. The court granted Wells Fargo's demurrer to the SAC on August 23, 2019, and dismissed the case without leave to amend.

## DISCUSSION

---

[1]    There were two loans secured on the property, a first lien of $100,000 and a home equity line of credit of $225,000. Bauman does not distinguish between the two loans. We refer to them collectively as a single loan.

# I

## STANDARD OF REVIEW

*General Principles of Appellate Review*

A demurrer tests the legal sufficiency of the allegations of the complaint to state valid causes of action. (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777 (*Harris*).) On review, we exercise our independent judgment. (*Id.* at p. 777.) In doing so, we accept as true all properly alleged material facts, but not deductions, contentions, or conclusions of law or fact. (*Ibid.*) We may also consider matters that are subject to judicial notice, and we must disregard allegations that are contrary to facts judicially noticed. (*Intengan v. BAC Home Loans Servicing L.P.* (2013) 214 Cal.App.4th 1047, 1052.)

We review the failure to grant leave to amend for an abuse of discretion. The burden falls on the plaintiff to "show what facts he or she could plead to cure the existing defects in the complaint." (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 853–854 (*Boyd*).) The plaintiff must set forth the applicable substantive law and "factual allegations that sufficiently state all required elements of that cause of action . . . ." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44 (*Rakestraw*); *People ex rel. Brown v. Powerex Corp.* (2007) 153 Cal.App.4th 93, 112 [plaintiff must "spell out in his brief the specific proposed amendments on appeal"].)

Bauman represented herself in both the trial and appellate courts. The procedural rules apply to a self-represented party in the same manner as to a party represented by counsel. (*Burkes v. Robertson* (2018) 26 Cal.App.5th 334, 344–345; *McClain v. Kissler* (2019) 39 Cal.App.5th 399, 416.) As such, she has the burden of demonstrating that the trial court committed an error that justifies reversal of the judgment. (*Jameson v. Desta* (2018) 5

Cal.5th 594, 609 (*Jameson*).) In this respect, Bauman has provided only cursory arguments that are not grounded in the record and that lack relevant supporting authorities. (*Craddock v. Kmart* (2001) 89 Cal.App.4th 1300, 1307.) This is insufficient. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] . . . Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) "We are not bound to develop appellants' arguments for them" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830) or "to examine undeveloped claims." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Moreover, we review the issues raised by Bauman only to the extent that she has developed her claims with facts in the record and legal authorities that support her claims. Bauman has failed to provide a complete record and to support references in her brief to matters of record by a citation to the volume and page number of the record where the matter appears. (See Cal. Rules of Court, rule 8.204(a)(1)(C); see also *Jameson, supra*, 5 Cal.5th at p. 609.)

Bauman counters the deficient record and support for her arguments by contending the court did not give her enough notice or time to request a statement of decision. In ruling on a demurrer, the lower court must "include in its decision or order a statement of the specific ground or grounds upon which the decision or order is based." (Code of Civ. Proc., § 472d.) Here, the court posted tentative rulings before its rulings. Bauman, however, has not included in the record the tentative decisions for the demurrers, minute orders or reporter's transcripts of the hearings, other than a minute order from March 1, 2018, that states, "The court will hear this matter." In the

4

absence of any evidence to the contrary, we presume that the court stated the grounds on which it sustained the demurrer in its tentative decisions or its orders.  (Evid. Code, § 664 [presumption that duty was regularly performed]; *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 653–654 [presumption that court knew and followed the law].)

Failure to state grounds for sustaining a demurrer is harmless, in any event, unless the appellant can show prejudice.  (*Lambert v. Carneghi* (2008) 158 Cal.App.4th 1120, 1128, fn. 4.)  Bauman apparently knows the basis for the ruling because she asserts the SAC was dismissed due to the statute of limitations.  Bauman, however, has not created a record that shows any prejudice from the lack of a written statement of grounds.

III

LEAVE TO AMEND

Bauman contends that the court erred in failing to grant her leave to amend her complaint a third time.  She contends that she could amend her complaint to state that Wells Fargo waived the statute of limitations in its loan contract with her.  That alleged waiver was already included in her SAC, however, so a third amendment would add no new fact.

In further support for her position, Bauman quotes a paragraph from the 2007 deed of trust that states, "*I* will waive, within applicable law, the pleading of the statute of limitations *as a defense to enforce* this Security Agreement . . . ."  The deed of trust defines "I" as the borrower, Bauman.  This is a waiver by the borrower, not by the lender.

The court has already rejected Bauman's argument that Wells Fargo waived the statute of limitations by this instrument when it sustained the demurrer to the SAC.  As we have already noted, amending the complaint a third time would not add anything new.  Therefore, we conclude court did not

5

abuse its discretion in refusing to grant leave to amend.  (*Boyd, supra*, 18 Cal.App.5th at pp. 853–854.)

IV

EFFECT OF BANKRUPTCY FILINGS ON THE STATUTE OF LIMITATIONS

Bauman contends that the court erred in sustaining the demurrer on statute of limitation grounds because she was stayed from filing this complaint by multiple bankruptcy filings between 2010 and 2018.  The SAC mentions the filings in very general terms.  The record shows that Bauman filed for bankruptcy six times between 2010 and 2018:  two proceedings in chapter 7, and four proceedings in chapter 13.[2]

Voluntary bankruptcy filings stay only actions *against* the debtor. Bankruptcy filings do not stay actions *by* the debtor against others.  (*ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.* (2004) 118 Cal.App.4th 1031, 1037, fn. 3 (*ECC Construction*); *In re Palmdale Hills Property, LLC* (9th Cir. 2011) 654 F.3d 868, 875 (*Palmdale*).)

The purpose of bankruptcy's automatic stay is to protect the debtor from his or her creditors.  It does not prevent the debtor from pursuing his or her claims against others.  The filing of a bankruptcy petition operates as an automatic stay of "the commencement or continuation . . . of a judicial . . . proceeding *against* the debtor that was or could have been commenced before the commencement of the [bankruptcy proceeding] . . . ."  (11 U.S.C. § 362(a)(1), emphasis added).  The filing of a bankruptcy petition "tolls time

---

[2]    Wells Fargo requested judicial notice of the dockets of Bauman's bankruptcy proceedings.  These court filings are properly subject to judicial notice.  (Evid. Code, § 452, subd. (d).)  Bauman did not include in the record on appeal the court's ruling on the request for judicial notice, however.  In the absence of a record to the contrary, we presume the trial court granted the request in support of the demurrer.  (*Jameson, supra*, 5 Cal.5th at p. 609.)

periods for commencing or continuing a judicial action *against* the debtor [citation], such as the limitations period for commencing an action [citation] or the time for enforcing or bringing an action to enforce a judgment against a debtor [citations]. It does not toll any limitations period affecting an action *by* the debtor." (*ECC Construction, supra,* 118 Cal.App.4th at p. 1037, fn. 3, emphasis added; *Palmdale, supra,* 654 F.3d at p. 875 ["[bankruptcy] stay does not prevent a plaintiff/debtor from continuing to prosecute its own claims"]; *In re Merrick* (B.A.P. 9th Cir. 1994) 175 B.R. 333, 337 (*Merrick*) [" 'the automatic stay is inapplicable to suits *by* the bankrupt' "].)

Cases cited by Bauman are not to the contrary. Legal actions *against* the debtor were stayed in *Kertesz v. Ostrovsky* (2004) 115 Cal.App.4th 369, 378 (*Kertesz*), and *Wells v. California Tomato Juice Co.* (1941) 47 Cal.App.2d 634, 637.[3] *Kertesz* and *Wells* are not applicable because they do not address the issue here, an action *by* the debtor against the bank.

Bauman also cites cases stating that a debtor in a chapter 7 proceeding cannot initiate a complaint on his or her own because the trustee in chapter 7 has control over all of the debtor's assets, including the debtor's causes of action. (*Merrick, supra,* 175 B.R. at p. 337 [cause of action is an asset of estate in chapter 7]; *Lane v. Vitek Real Estate Industries Group* (E.D. Cal. 2010) 713 F.Supp.2d 1092, 1096 (*Lane*); *In Re Corbett* (Bankr. E.D. Cal. No. 14-01089, 2016) [2016 WL 1045667].) This assertion is correct. However, it is not applicable in chapter 13 proceedings and does not prevent the debtor from obtaining leave to pursue his or her claims against others.

> " 'In [chapter 7] liquidation proceedings, *only* the trustee has standing to prosecute or defend a claim belonging to the estate. The same cannot be said for trustees under the

---

[3]    Bauman has cited an unpublished case as well. Unpublished opinions may not be cited or relied upon. (Cal. Rules of Ct., rule 8.1115(a).)

reorganization chapters.  In those regimes, the debtor has express authority to sue and be sued.  [Citation.]  Bankruptcy Rule 6009, which applies to chapters 7, 11 and 13, directs that "[w]ith or without court approval, *the trustee or debtor in possession* may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal."  [Citation.]  The Chapter 13 debtor has been considered analogous to Chapter 11, which grants the debtor full authority as representative of the estate typical of a trustee.  [Citation.]" (*In re DiSalvo* (9th Cir. 2000) 219 F.3d 1035, 1039 (*DiSalvo*).)

We note Bauman was in chapter 7 proceedings for no more than two years in total.  The rest of her proceedings were in chapter 13, and she could sue as the representative of the estate.  (*Di Salvo*, *supra*, 219 F.3d at p. 1039; *Kelsey v. Waste Management Co. of Alameda County* (1999) 76 Cal.App.4th 590, 595 [chapter 13 debtor has standing to sue outside the bankruptcy court].)

Moreover, a debtor in chapter 7 can sue in his or her own name if the trustee abandons the claim.  (*Lane*, *supra*, 713 F.Supp.2d at p. 1097.)  The debtor can force the trustee to prosecute the action or to abandon it to the debtor.  (*Danielson v. ITT Industrial Credit Co.* (1988) 199 Cal.App.3d 645, 656 (*Danielson*).)  A chapter 7 proceeding, therefore, does not toll the period for state court litigation.  (*Ibid*.; see also *A. Groppe & Sons Glass Co., Inc. v. Fireman's Fund Ins. Co.* (1991) 232 Cal.App.3d 220, 225 [reorganization proceedings].)

Bauman contends that she could amend the complaint to state that she asked the trustee to pursue these causes of actions against Wells Fargo and

the trustee refused.[4] This would not assist her, however, because if the trustee refused to pursue the claims, Bauman could have obtained an order of abandonment by the trustee to pursue the claims on her own. (*Danielson*, *supra*, 199 Cal.App.3d at p. 656.)

Bauman's multiple bankruptcy filings did not toll the statute of limitations for her causes of action against Wells Fargo.

## V

## ADDITIONAL CLAIMS

Bauman contends that the trial court did not consider her causes of action that were based on Wells Fargo's conduct in 2017 and 2018. She claims that the statute of limitations did not run as to those causes of action. Bauman identifies these claims in general terms only, without citations to the record. Therefore, there are no citations or applicable authorities to support her arguments.

Bauman mentions a claim for "[r]ecoupment and set-off" in her opening brief, but there is no such cause of action in the SAC. She also claims in her brief that she stated a conversion claim for unauthorized ads for sale of her property, but that is not correct. She alleged a conversion claim in the SAC that was based on an action on January 28, 2013, when Wells Fargo allegedly seized her bank accounts to cure the loan default. This claim was not filed within the three-year statute of limitations for conversion. (Code Civ. Proc. § 338, subd. (c).)

Bauman's additional claims for "false light," false statements, and personal injury are based in part on Wells Fargo's recording of notices of default and foreclosure on her property. Recording and publication of notices

---

4    Bauman refers, without a record citation, to a proposed third amended complaint. The record does not contain a proposed third amended complaint.

9

of default and foreclosure sale are privileged communications under Civil Code section 2924, subdivision (d)(1) and (d)(2) and thus protected from tort claims. (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1336.) The claims are also based on Wells Fargo's reporting to credit agencies of Bauman's failure to make monthly mortgage payments after 2011. The Federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) preempts all state common law tort claims against furnishers of credit information. (*Sanai v. Saltz* (2009) 170 Cal.App.4th 746, 773.) Thus, these additional claims are barred for reasons other than the statute of limitations.

We have reviewed the cases[5] cited by Bauman and find none that support her argument. (*Addison v. State of California* (1978) 21 Cal.3d 313, 319 [equitable tolling suspends statute of limitations for period plaintiff pursued claim in court that did not have jurisdiction]; *Neitzke v. Williams* (1989) 490 U.S. 319, 328–329 [claim that is dismissed for failure to state cause of action is not necessarily frivolous]; *Idaho Sporting Congress, Inc. v. Rittenhouse* (9th Cir. 2002) 305 F.3d 957, 964–965 [no res judicata when operative facts are different].)

We conclude that the trial court did not err in dismissing all of Bauman's causes of action without leave to amend.

---

[5] We disregard the unpublished decision cited by Bauman. (See Cal. Rules of Ct., rule 8.1115(a).)!

## FAILURE TO FOLLOW NINTH CIRCUIT LAW

Without identifying which law, Bauman contends that Wells Fargo disregarded Ninth Circuit law. Bauman cites only to the Register of Actions and appears to cite documents that she submitted to the court.

Bauman has cited *In re Blenheim* (9th Cir. 2015) 803 F.3d 477 and *In re Mann* (9th Cir. 1990) 907 F.2d 923, 926–927, at the beginning of her opening brief for the legal principle that it is proper to file bankruptcy petitions to prevent foreclosure on a mortgage. If these are the cases that Bauman claims Wells Fargo disregarded, they are not relevant here. *Blenheim* and *Mann* are both bankruptcy proceedings that do not involve discussion of causes of actions filed by a debtor against a lender in state court.

Bauman also criticizes Wells Fargo for failing to respond to *Kertesz*, *supra*, 115 Cal.App.4th at p. 378. As noted above, that case states that legal actions *against* the debtor are stayed by bankruptcy proceedings. *Kertesz* did not address the effect of bankruptcy on legal actions *by* the debtor.

## DUE PROCESS AND LACK OF JURISDICTION

Bauman claims, in cursory fashion and without legal support, that dismissal of her SAC without leave to amend was a violation of due process and that the court lacked subject matter jurisdiction to dismiss the complaint without leave to amend.

Bauman's theories are not supported by legal authority. We would, however, consider Bauman's request for leave to amend if she provided factual allegations and applicable substantive law that would support a valid, timely cause of action against Wells Fargo. (*Rakestraw*, *supra*, 81

11

Cal.App.4th at pp. 43–44; *Boyd, supra,* 18 Cal.App.5th at pp. 853–854.)  She has not.

## DISPOSITION

Bauman has not carried her burden of showing that the trial court committed any error that justifies reversal of the judgment.  (*Jameson, supra,* 5 Cal.5th at p. 609; *In re S.C., supra,* 138 Cal.App.4th at p. 408.)

The judgment is affirmed.  Costs on appeal to be awarded to defendant.


BENKE, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.

12